IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

JOSE LUIS GAVINA                                                              PLAINTIFF


            v.                         CIVIL NO.        10-2101


MISHAEL J. ASTRUE, Commissioner
of Social Security Administration                                      DEFENDANT

### MEMORANDUM OPINION

Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits (DIB), and supplemental security income ("SSI") under Title II of the Social Security Act (Act), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g)*.*


I.      **Procedural Background:**

Plaintiff filed his current applications for disability insurance benefits (DIB) and supplemental security income (SSI) payments on December 3, 2007, alleging disability since April 6, 2007, due to back and neck pain (Tr. 69, 122, 129, 164). The Agency denied his applications initially and on reconsideration (Tr. 77, 80, 85, 87). Pursuant to Plaintiff's request, an ALJ held a de novo hearing on May 12, 2009, at which Plaintiff, represented by counsel, and a vocational expert testified (Tr. 20-61).

II.     **Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision.  *Id.*  "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision."  *Id.*  As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently.  *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001).  If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary."  *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity.  *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § § 423(d)(3), 1382(3)(c).  A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.  *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation

process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

III.   **Discussion**:

Plaintiff was 47 years old at the time of the administrative hearing (Tr. 25). He has a fourth-grade education, and has work experience as a poultry machine operator and hand packager (Tr. 24, 54, 57). The ALJ determined that the Plaintiff retained the residual functional capacity (RFC) to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can only occasionally climb, balance, stoop, kneel, crouch, crawl, or reach overhead and that he was limited to unskilled work. (T. 73). The Plaintiff contends that the ALJ's decision of the Plaintiff's RFC was not supported by substantial evidence. (ECF No. 6, p. 15).

Light work is defined by the DOT:

> Exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly to move objects.... Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the

job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible. *See Page v. Astrue*, 484 F.3d 1040, 1044 (C.A.8 (Ark.),2007)

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. *Id*. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

The ALJ found that the Plaintiff suffered from sever impairments of post foraminotomy and fusion;[1] degenerative disk disease; depression; diabetes; and diabetic neuropathy. The ALJ also found that the Plaintiff had a non-severe impairment of mitral valve insufficiency.

a. Diabetes

On January 22, 2007 the Plaintiff was seen at Twin Cities Medical Clinic with a diagnosis

---

[1]Transforaminal lumbar interbody fusion (TLIF) is a surgical technique that involves removing a disc from between two vertebrae and fusing the vertebrae together. See http://www.cedars-sinai.edu/Patients/Programs-and-Services/Spine-Center/Services/Surgical-Treatments/Transforminal-Lumbar-Interbody-Fusion-TLIF.aspx. (Viewed July 10, 2011).

of diabetes mellitus type two. (T. 227).  The clinic noted that his hemoglobin A1C [2] was doing very well and much improved (T. 225) on February 5th but on March 1st he sugar level was down to 69 and the clinic noted that they "discussed diet and snack choices". (T. 223). On March 19, 2007 an MRI showed a disk herniation at C5-C6 and the Plaintiff was set up to see Dr. Capocelli. (T. 221).  On April 2, 2007 the clinic noted that the Plaintiff was on Humalog, metformin, Nasonex, tramadol, Flexeril and Mobic. (T. 220).  On October 16, 2008 the Plaintiff was seen at the clinic for a diabetic foot ulcer and he was placed on Neurontin [3] for his peripheral neurophath. [4]On December 10, 2008 it was noted that the Plaintiff was "managing well with the insulin". (T. 436).

Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits. *See, e.g., Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir.2004); *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir.1987); see also *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir.1983) (affirming a denial of benefits and noting that the claimant's impairments were responsive to medication). *Warre v. Commissioner of Social Sec. Admin*. 439 F.3d 1001, 1006 (C.A.9 (Or.),2006).  In this case it appears that the Plaintiff's diabetes is controlled well with medication.

---

[2]The A1C test is a common blood test used to diagnose type 1 and type 2 diabetes and then to gauge how well it is being managed.  See www.mayoclinic.com   (viewed July 12, 2011).

[3]Neurontin (gabapentin) is an anti-epileptic medication, also called an anticonvulsant. It affects chemicals and nerves in the body that are involved in the cause of seizures and some types of pain.  See www.drugs.com  (Viewed July 13, 2011)

[4]Peripheral neuropathy is the most common form of diabetic neuropathy. It damages nerves in the feet, legs, arms, and hands.  See www.mayoclinic.com  (Viewed July 13, 2011).

On March 19, 2009 the Plaintiff presented to the Twin Cities Clinic and stated that he "had been out working, moving some things around in the house and behind the house" and as a result had a drop in blood sugar.  The clinic noted that "as of right now his blood sugar is doing extremely well" and the opinion was that when the Plaintiff is "active" he may not require the amount of insulin he normally takes. (T. 434).  There is nothing to indicate that the Plaintiff's diabetic conditions is not properly controlled with medication.  Substantial evidence supports the ALJ's determination that Plaintiff's diabetic condition was not disabling (Tr. 75).

     b.  Heart Condition:

Doctors found that Plaintiff had trace mitral insufficiency in June 2007 (Tr. 236). However, later that month Plaintiff underwent a myocardial perfusion study and the findings were normal (Tr. 279). Also, on October 17, 2008, an x-ray examination of Plaintiff's chest showed normal results (Tr. 464).  Substantial evidence supports the ALJ's determination that Plaintiff's heart condition was not disabling (Tr. 75).

     c.  Depression:

The Plaintiff first complained of Depression in September 2007 (T. 263) but did not list depression in his initial application for disability  but only listed lumbar pain, neck pain, back problems (T. 164) nor did he list depression as a basis for his disability in any Disability Report (T. 174).  The fact that the plaintiff did not allege depression as a basis for disability in the application for disability benefits is significant, even if the evidence of depression was later developed. See *Smith v. Shalala*, 987 F.2d 1371, 1375 (8th Cir.1993); *Dunahoo v. Apfel*, 241, F. 3d 1033, 1039 (8th Cir. 2001). The ALJ ordered a consultive examination performed by Kathleen Kralik on June 17, 2008 who found that the Plaintiff had a Adjustment Disorder with mixed

anxiety and depressed mood and assessed the Plaintiff's GAF at 51-60.[5]  (T. 396).  On June 26,

2008 Dr. Jerry R. Henderson performed a Psychiatric Review Technique which found the

Plaintiff to be moderately limited in Maintaining Social Functioning and Concentration,

Persistence, or Pace, Mildly Restricted in Activities of Daily Living and No Episodes of

Decompensation. (T. 424). Dr. Henderson also performed a Mental Residual Functional Capacity

Assessment which found the Plaintiff only Moderately or Not Significantly Limited in his

functional capacity. (T. 430). Silvia Balsara, Ph. D. noted on April 29, 2009 that she had been

treating the Plaintiff since August 2008 with "positive results" and that he "responded well to

supportive therapy and medication changes. (T. 478).   "If an impairment can be controlled by

treatment or medication, it cannot be considered disabling." *Brown v. Barnhart*, 390 F.3d 535,

540 (8th Cir.2004) (internal quotations omitted); see 20 C.F.R. §§ 404.1530(b), 416.930(b);

*Brace v. Astrue*,  578 F.3d 882, 885 (C.A.8 (Iowa),2009).  Substantial evidence supports the

ALJ's determination that Plaintiff's depression  was not disabling .

       d.  Post Foraminotomy and Fusion and Degenerative Disk Disease:

       On April 5, 2007 the Plaintiff was seen by Dr. Anthony Capocelli, M.D. who diagnosed

him with Multi-level bulging disc and Grade I spondylolisthesis at L5-S1 with chronic foraminal

compression. This diagnosis was confirmed by CT Myelograpy (T. 372-377) which showed

severe foraminal impingement. (T. 369). On August 13, 2007 the Plaintiff was admitted to

SEMMC for surgery which was performed by Dr. Capocelli on that date. (T. 354).  The Plaintiff

---

       [5]A GAF of 41 to 50 indicates "Serious symptoms ... OR any serious impairment in social,
occupational, or school functioning (e .g., few friends, unable to keep a job)." Diagnostic and
Statistical Manual of Mental Disorders (DSM-IV-TR) 34 (4th ed.2000). A GAF score of 51 to 60
indicates "moderate symptoms ... OR moderate difficulty in social, occupational, or school
functioning." DSM-IV-TR at 34.

was discharged on August 16, 2007 as stable and improved. (T. 349). The Plaintiff, however, returned to see Dr. Capocelli on October 2, 2007 complaining of pain (T. 347) and he was started on physical therapy.  Dr. Capocelli saw the Plaintiff again on October 16, 2007 and noted that his flexion was 50%, extension 25% and right and left rotation of 25%. (T. 344).  The Plaintiff returned to see Dr. Capocelli complaining of pain on November 14, 2007 (T. 341), January 25, 2008 (T.. 340), and February 22, 2008 (T. 337).  A CT scan on March 3, 2008 showed evidence of "good fusion without instrumentation failure" but that there was spondylolisthesis of L4 on L5 and L5 on S1(T. 336 & 283).

On March 12, 2008 Dr. Jerry Mann issued a Physical Residual Functional Capacity Assessment which found that the Plaintiff could Occasionally lift 20 pounds, Frequently lift 10 pounds, Stand and/or Walk and Sit for about 6 hours in an 8 hour day (T. 249).  Dr. Mann's opinion was confirmed by Dr. Jim Takach on June 3, 2008. (T. 390).  Both Dr. Mann and Dr. Takach were non examining consultive evaluations. *See Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999) (holding that the opinion of a consulting physician who examined the plaintiff once or not at all does not generally constitute substantial evidence).

Carman Oxford, a nurse,  completed an Estimated Functional Abilities Form on October 16, 2008 stating that the Plaintiff could never lift anything greater than 21 pounds and only occasionally lift anything less than 20 pounds.  She also found that the Plaintiff could never kneel, crawl or climb and only occasionally bend, reach above his shoulder and push or pull 10 pounds. (T. 472).  She also felt that the Plaintiff would be restricted to Sedentary Activity.[6]

---

[6] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often

The ALJ discounted the opinion of nurse Oxford.  A nurse practitioner and therapists are not physicians, psychologists, or other acceptable medical sources as defined by the Regulations. See 20 C.F.R. §§ 404.1513(a), 416.913(a) (excluding therapists and nurse practitioners from the list of acceptable medical sources); *Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir.2005) ("A therapist is not an 'acceptable medical source' to establish 'a medically determinable impairment.' ")

On November 11, 2009, six months after the hearing  before the ALJ and 42 days after the ALJ had made his decision,  Dr. Capocelli wrote a letter with the opinion that the Plaintiff could not return to his past work and that he would be limited to "essentially sedentary work duties, which would include no more than 10 pounds of lifting occasionally, frequent position changes, no more than one to two hours of standing, sitting, and lying down in an eight-hour day". (T. 480).

Once it is clear that the Appeals Council has considered newly submitted evidence, the court does not evaluate the Appeals Council's decision to deny review.  Instead, the court's role is limited to deciding whether the administrative law judge's determination is supported by substantial evidence on the record as a whole, including the new evidence submitted after the determination was made.  *See, e.g.*, *Nelson v. Sullivan*, 966 F.2d 363, 366 (8th Cir. 1992), and *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir.1992).  Of necessity, that means that the court must speculate to some extent on how the administrative law judge would have weighed the newly submitted report if it had been available for the original hearing.  We consider this to be a

---

necessary when carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §§ 404.1567(a) and 416.967(a).

peculiar task for a reviewing court.  *See Riley v. Shalala*, 18 F.3d 619, 622 (8th Cir. 1994).

The opinion of a treating physician is accorded special deference and will be granted controlling weight when well-supported by medically acceptable diagnostic techniques and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2); *Prosch v. Apfel*, 201 F.3d 1010, 1012-13 (8th Cir. 2000). The court also notes that Dr. Capocelli is an orthopedic specialist. Opinions of specialists on issues within their areas of expertise are "generally" entitled to more weight than the opinions of non-specialists. See 20 C.F.R. §§ 404.1527(d)(5), 416.927(d)(5). *Guilliams v. Barnhart*  393 F.3d 798, 803 (C.A.8 (Mo.),2005), 20 C.F.R. § 404.1527.

In this case there is no formal "opinion" from Dr. Capocelli but only a "To Whom It May Concern" letter.  The ALJ is not required to act as Plaintiff's counsel. *See Clark v. Shalala*, 28 F.3d 828, 830 (8th Cir. 1994) (ALJ not required to function as claimant's substitute counsel, but only to develop a reasonably complete record); *see also Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995) ("reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial") but the ALJ has a duty to fully and fairly develop the record.  *See Frankl v. Shalala*, 47 F.3d 935, 938 (8th Cir. 1995)(ALJ must fully and fairly develop the record so that a just determination of disability may be made)..  In this case the distinction between the ability to do light work verses sedentary work is crucial.

 If a treating physician has not issued an opinion which can be adequately related to the disability standard, the ALJ is obligated to address a precise inquiry to the physician so as to clarify the record.  *See Vaughn v. Heckler*, 741 F.2d 177, 179 (8th Cir. 1984).  In this instance the ALJ never had an opportunity to further develop the opinion of Dr. Capocelli because the

-10-

Plaintiff's attorney did not secure the evidence until after the hearing before the ALJ.  The court believe that the case should be remanded to further develop the record concerning the opinion of the treating physician and surgeon, Dr. Capocelli.

**IV.    Conclusion:**

Accordingly, the court finds that the ALJ's decision is not supported by substantial evidence, and therefore, the denial of benefits to the Plaintiff should be reversed and this matter should be remanded to the Commissioner for further consideration.

It appears to the court that the evidence resulting in the necessity of a remand could have been presented by the Plaintiff prior to the hearing before the ALJ and the court will not entertain a request for fees by the Plaintiff's attorney absent a showing of cause for the failure to timely present the evidence.

Dated  this July 15, 2011.

/s/ J. Marschewski
HONORABLE JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

-11-